**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

RAYSHAWN PEARSON, a/k/a            )
RAYSHAWN KALIF PEARSON        )
#326594,                                         )
                                                      )    CIVIL ACTION NO. 9:14-3943-TMC-BM
                         Petitioner,          )
                                                      )
v.                                                  )    **REPORT AND RECOMMENDATION**
                                                      )
WARDEN JOSEPH MCFADDEN,  )
LIEBER CORRECTIONAL INST.,   )
                                                      )
                         Respondent.       )
_____)

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on September 29, 2014.[1]

The Respondent filed a return and motion for summary judgment on April 14, 2015. As the Petitioner is proceeding pro se, a Roseboro order was filed on April 15, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving extensions of time to file a response, Petitioner thereafter filed a response in opposition on July 21, 2015.

This matter is now before the Court for disposition.[2]

_____

[1]Filing date under Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)



1

### Procedural History

Petitioner was indicted in Williamsburg County in December 2006 for one count of murder [Indictment No. 06-GS-45-340], two counts of armed robbery [Indictment Nos. 06-GS-45-339 & 06-GS-45-340], two counts of possession of a weapon during the commission of a violent crime [Indictment Nos. 06-GS-45-339 & 06-GS-45-340], and one count of criminal conspiracy [Indictment No. 06-GS-45-340].  (R.pp. 3, 37, 124-126).  Petitioner was represented by Craig D. Brown, Esquire.

On February 1, 2007, after a jury had been selected to try Petitioner on the earliest armed robbery charge (Indictment No. 06-65-45-339), and after the State had noticed Petitioner and his counsel that it would seek a LWOP sentence if petitioner were convicted of that armed robbery and the subsequent murder or the subsequent armed robbery, Petitioner pled guilty to murder, two counts of armed robbery, and two counts of possession of a weapon during the commission of a violent crime.  (R.pp. 1-14).  The criminal conspiracy charge and a subsequent indictment for escape were dismissed, with sentencing deferred until a later date.  (R.pp. 3-4, 14).  On May 3, 2007, Petitioner was sentenced to life for murder, thirty (30) years imprisonment on the first count of armed robbery, twenty-five (25) years on the second count of armed robbery, and five (5) years for possession of a weapon during the commission of a violent crime in.[3]  (R.pp. 36-38).

---

(...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C.  The Respondent has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Since Petitioner was sentenced to life on Indictment No. 06-GS-45-340, the sentencing judge could not sentence Petitioner under that same indictment for the possession of a weapon during the commission of a violent crime charge.  See discussion (Ground Four), infra.

2



Petitioner filed a timely notice of appeal. Petitioner was represented on appeal by Robert M. Dudek, Deputy Chief Appellate Defender of the South Carolina Office of Appellate Defense, who filed an Anders[4] brief requesting to be relieved and raising the following issue:

> Whether the court erred by accepting appellant's guilty plea where the truncated waiver of constitutional rights colloquy was less then [sic] one page of transcript long since this was not a meaningful waiver of rights to assure the guilty plea to murder was intelligently entered as an option to trial as mandated by Boykin v. Alabama, 395 U.S. 238 (1969)?

See Anders Brief, p. 3 [Court Docket No. 36-2, p. 4].

On May 28, 2009, after a thorough review of the record and counsel's brief pursuant to Anders and State v. Williams, 406 S.E.2d 357 (S.C. 1991), the South Carolina Court of Appeals denied and dismissed the appeal. State v. Pearson, No. 2009-UP-240 (S.C.Ct.App. filed May 28, 2009). See Court Docket No. 36-3. The Remittitur was sent on June 15, 2009. See Court Docket No. 36-4.

On April 12, 2010, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court[5]; Pearson v. State of South Carolina, No. 2010-CP-45-0132; raising the following issues:

> **Ground One**: My Lawyer stated to me that the Solicitor agreed to 30 years if I took plea.

---

[4]Anders v. California, 386 U.S. 738 (1967). Anders requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Anders, 386 U.S. at 744.

[5]Although the APCR is date stamped April 12, 2010, Petitioner had apparently filed an APCR in 2008, while his direct appeal was still pending. However, that PCR application was not served on the Respondent until after his direct appeal was dismissed. His APCRs were then merged into one APCR action for purposes of PCR review. See (R.p. 113, n. 1).

3



a. I have a letter dated May 16, 2007 where my lawyer stated to me that the only way I would receive less than life is by pleading guilty. So that's why I took the plea. Lawyer stated I would receive 30 years if plead guilty.

**Ground Two:** I was denied Due Process. Why would I agree to the sentenced (sic) imposed on me. I was told that I would receive 30 years in return for taking plea.

**Ground Three:** Involuntary Guilty Plea.

(R.p. 42).

Petitioner amended his application on July 9, 2012,[6] raising the following issue:

Lack of Subject Matter Jurisdiction.

(R.p. 78).

Petitioner was represented in his APCR by Charles T. Brooks[7], Esquire, and an evidentiary hearing was held on Petitioner's application on September 21, 2012. (R.pp. 80-109). In an order filed November 8, 2012 (dated November 1, 2012), the PCR judge denied relief on the APCR in its entirety. (R.pp. 113-122).

Petitioner then filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Robert M. Dudek, Chief Appellate Defender of the South Carolina Office of Appellate Defense, who filed a <u>Johnson</u>[8] petition requesting to be relieved and raising the following issue:

---

[6]Respondent says in his brief that Petitioner also filed an amendment alleging ineffective assistance of counsel (but doesn't give supporting grounds). However, the only amendment in the record is the one filed July 9, 2012.

[7]Petitioner was apparently initially represented by Rebecca G. McGill, Esquire. However, she was relieved as counsel and Charles Brooks was substituted as appointed counsel in an ordered dated May 31, 2012 (filed on June 6, 2012). (R.p. 76).

[8]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see</u> <u>also</u> <u>Anders</u>, 386 U.S. at 744.



Was Petitioner ineffectively represented where his defense attorney failed to have him properly evaluated for mental retardation and where counsel failed to stress Petitioner's mental deficiencies in mitigation during the plea proceeding which resulted in Petitioner receiving a sentence of life without parole where his young age and mental capacity should have been significant mitigation?

See Petition, p. 2 (Court Docket No. 36-5, p. 3).

In Petitioner's pro se response to the Johnson petition, Petitioner raised the following issues:

**Ground One:** Procedure lack of competency were [sic] Petitioner suffers from mental retardation defense counsel failed to have Petitioner evaluated by the appropriate facility and have him stay at the facility for the required 15 days per state law and this lack of help from defense counsel shows ineffective assistance of counsel as will . . . [no further statement in pro se brief.]

**Ground Two**: (Ineffective assistance of counsel/ plea advice) / (involuntary guilty plea / unknowing and unintelligent) / (trial court error in accepting plea).

**Ground Three:** Lack of subject matter jurisdiction due to defective or improper indictment/ trial court error in not dismissing indictment / indictment not properly filed with clerk of court, etc.

See Court Docket No. 36-6.

On August 21, 2014, the South Carolina Supreme Court denied Petitioner's writ of certiorari and granted counsel's request to be relieved. See Court Docket No. 36-7. The Remittitur was sent down on September 8, 2014. See Court Docket No. 36-8.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** Ineffective Assistance of counsel. Trial counsel's failure to protect mentally retarded defendant's statutory and due process rights deprived Petitioner of his Sixth and Fourteen Amendments.[9]

**Ground Two:** Involuntary Guilty Plea. Petitioner's guilty plea is involuntary and

---

[9]In his supporting facts for Ground One, he appears to also be raising this issue as an ineffective assistance of PCR counsel claim.



unintelligent because plea counsel misrepresented the sentence that Petitioner was pleading guilty to in violation of his Sixth and Fourteenth Amendment rights.

**Ground Three:** Petitioner's sentence is unconstitutional because he is mentally retarded and had just turned eighteen only a couple of months prior to charged offenses, was sufficient mitigation.

**Ground Four:** Illegal sentence for possession of a weapon during the commission of a violent crime.

See Petition, pp. 6, 8-9, 11.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11.  Further, while the federal court is charged with liberally construing  pleadings filed by a pro se litigant to allow the development of a potentially meritorious case;  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

In Ground One of his Petition, Petitioner argues that his trial counsel was ineffective for failing to protect his statutory and due process rights, as a mentally retarded defendant, under the



Sixth and Fourteenth Amendments.[10]  In Ground Two, Petitioner contends that his guilty plea was

involuntary and unintelligent because plea counsel misrepresented the sentence to which Petitioner

was pleading guilty, in violation of his Sixth and Fourteenth Amendment rights.  These claims were

both addressed in Petitioner's PCR proceedings, where he had the burden of proving the allegations

in his petition, as well as on appeal to the State Supreme Court.  Butler v. State, 334 S.E.2d 813, 814

(S.C. 1985), cert. denied, 474 U.S. 1094 (1986); see also Court Docket No. 36-5, p. 3; 36-7; see also

(R.pp. 119, 120-121).  The PCR court rejected these claims, making relevant findings of fact and

conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Pearson

v. State of South Carolina, No. 2010-CP-45-0132.

          Specifically, the PCR judge found that: 1) Petitioner testified during his PCR hearing

---

[10]To the extent that Petitioner is also attempting to raise an ineffective assistance of PCR counsel claim as part of his claim in Ground One, this allegation concerns alleged infirmities in Petitioner's state PCR proceeding, and as such is not a basis for federal habeas relief.  See Bryant v. Maryland, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995), cert. denied, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."].  Further, while the conduct of PCR counsel can constitute "cause" for a default of an *underlying claim* under certain circumstances, it is not itself an independent claim.  See also 28 U.S.C. § 2254(i)["The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."]; Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1320 (2012) [acknowledging that § 2254(i) precludes [a habeas petition] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"](quoting Holland v. Florida, 130 S.Ct. 2549, 2563 (2010)); Auls v. Cohen, No. 11-2930, 2013 WL 496239 at *3 (D.S.C. Feb. 6, 2013)[finding allegation "PCR counsel was ineffective . . . is not a proper basis for a § 2254 petition," citing 28 U.S.C. § 2254(i)].  Therefore, Petitioner has failed to state a basis for relief based on any alleged ineffective assistance of counsel in his PCR proceeding.  Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief]; Wright v. Angelone, 151 F.3d 151, 159 (4th Cir.1998) [alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action]; Nichols, 69 F.3d at 1275.



that his plea counsel told him that if he pled guilty, he would only be sentenced to thirty (30) years; 2) Petitioner testified that he would not have entered a guilty plea if he knew that he would be sentenced to more than thirty (30) years; 3) Petitioner stated that counsel told him this in writing, as well as told various members of his family; however, Petitioner did not introduce any evidence or call any witnesses to verify this allegation; 4) Petitioner also testified that he felt his counsel was ineffective for failing to show the plea court that he had a "known mental condition"; 5) Petitioner did acknowledge that counsel moved for a mental evaluation before the plea court and that he was evaluated by the Department of Mental Health prior to his plea and sentencing; 6) Petitioner did not provide the PCR court with any additional evidence or witnesses to verify this allegation or show what bearing, if any, it would have had on his guilty plea or sentence; 7) Petitioner asserted that he was being held in custody unlawfully due to a lack of subject matter jurisdiction; 8) specifically, Petitioner testified that the indictments in this case were fraudulently obtained due to false statements made to the Williamsburg County Grand Jury, and that the indictments were never stamped "true bill"; 9) Petitioner also testified that the warrants for his arrest were never properly filed with the Williamsburg County Clerk of Court; 10) Petitioner did not call any witnesses or introduce any evidence to verify this allegation;

11) Respondent called the Court's attention to the records from the Williamsburg County Clerk of Court, indicating that Petitioner's indictments were marked "true bill" and that his warrants were properly filed; 12) Petitioner's counsel testified that he has been practicing law since 1998 and had experience handling serious criminal matters such as Petitioner's charges; 13) counsel stated that he was appointed on this matter in 2005 and met with Petitioner numerous times prior to his guilty plea and sentencing; 14) counsel stated that during his meetings with the Petitioner, he



thoroughly discussed all elements of the crimes with which Petitioner was charged and what the State was required to prove for each crime; 15) counsel testified that these charges stemmed from two separate armed robberies at the same grocery store; 16) counsel testified that at the time of Petitioner's guilty plea, the State had called for trial the first armed robbery and possession of a weapon during the commission of a violent criminal charge; 17) counsel testified that he told Petitioner that this would greatly increase the chances of spending the rest of his life in prison if convicted during the first trial, as the State would likely seek life without parole on the second set of charges, including murder, which carried up to life imprisonment; 18) counsel testified that he advised his client that he felt the only way Petitioner would be sentenced to less than life imprisonment would be to plead guilty to all the charges at once; 19) counsel stated he advised Petitioner that if he pled guilty, he would receive a sentence between thirty (30) years imprisonment to life imprisonment, and that there was a significant chance that the plea court would still sentence Petitioner to life imprisonment; 20) counsel also provided a two page document from his file summarizing this discussion with Petitioner, which was signed by Petitioner and notarized; 21) Petitioner acknowledged that it was his signature on this document, and the signature matched the signature appearing on Petitioner's post-conviction relief application; 22) this document was admitted without objection; 23) additionally, counsel testified that he filed a motion for reconsideration following Petitioner's sentencing, asking the plea court to consider reducing Petitioner's sentence; 24) counsel testified that the plea court denied this motion without a hearing, but that he does not think that Petitioner was prejudiced by the lack of a hearing on that motion; 25) based on all of the above, counsel indicated that in his professional opinion a plea was in the best interest of Petitioner and that it was Petitioner's decision alone to plead guilty;



26) with regard to Petitioner's allegation that counsel was ineffective for failing to make the plea court aware of a "known mental condition" from which Petitioner suffered, counsel testified that he moved for a psychological and mental evaluation of Petitioner; 27) counsel testified that this evaluation was conducted by the Department of Mental Health prior to his guilty plea and sentencing hearings and counsel received a report from this evaluation; 28) counsel testified that the report showed that Petitioner had a lower IQ and was borderline mentally retarded; 29) counsel testified that he subpoenaed Petitioner's school records and hired a private investigator in this case to try to explore whether Petitioner's mental state could have an impact on this case; 30) counsel stated that he also spoke extensively with Petitioner's family about his case as well as Petitioner's mental health; 31) counsel testified that he shared the results of the Department of Mental Health evaluation, as well as his other findings, with the plea court App. 28-30; 32) counsel stated during the sentencing hearing, as well as during the evidentiary hearing, that he was able to communicate with Petitioner, that Petitioner understood the charges against him, was able to help with his defense, and had been gainfully employed before these charges; 33) based on this, counsel testified that he did not feel that Petitioner was incompetent to stand trial; 34) counsel also testified that he sufficiently informed the plea court of Petitioner's mental condition as mitigation during the sentencing phase;

35) counsel testified that there were never any issues regarding the indictments or warrants that he could challenge; 36) counsel elaborated that his standard practice was to raise such issues if they arose during his representation of a client;

37) Petitioner failed to carry his burden of proof; 38) counsel's testimony was credible while Petitioner's testimony was not credible; 39) counsel's testimony that he never advised Petitioner that he would receive a sentence of thirty (30) years imprisonment if he plead guilty was



supported by both the plea and sentencing transcripts; 40) counsel's performance was reasonable and effective; 41) Petitioner failed to establish any prejudice resulting from counsel's alleged ineffective assistance of counsel claim, as Petitioner failed to provide the Court with any evidence of counsel's promise of a thirty (30) year sentence;

42) the record reflected that counsel informed the plea court that Petitioner had a below average IQ and could be diagnosed as mentally retarded App. 28-30; 43) counsel moved for a mental evaluation, which was granted and Petitioner was evaluated by the Department of Mental Health prior to his guilty plea and sentencing; 44) counsel also employed a private investigator, subpoenaed Petitioner's educational records, and spoke extensively with Petitioner's family members regarding this case and his mental status; 45) counsel's performance was reasonable and effective on this issue; 46) Petitioner failed to show any prejudice resulting from this allegation, nor did he present any independent testimony or evidence of a mental health condition or how the existence of such condition would have impacted his guilty plea or sentencing; 47) the plea court was already aware of the condition that Petitioner asserted at the time of sentencing; 48) therefore, this allegation was denied and dismissed;

49) Petitioner's allegation of various defects in the warrants and indictments in this matter showed that the court did not have subject matter jurisdiction to accept his guilty plea, did not warrant relief; 50) the failure to follow administrative procedures regarding the disposition of indictments or the filing of the same does not affect the subject matter jurisdiction of the trial court to hear a particular case; 51) the indictments sufficiently stated the offenses, and any alleged defects in the indictments did not deprive the trial court of jurisdiction to accept Petitioner's guilty plea; 52) there was no basis upon which to conclude that the trial court lacked subject matter jurisdiction; 53)



Petitioner's conviction involved a criminal charge in General Sessions Court; 54) the indictments in this case were facially valid; they contain all the necessary elements of the offenses intended to be charged, state the date of the offenses, county where the offense occurred, and the name of the accused; 55) furthermore, Petitioner showed no prejudice from any alleged defects in the indictments; and 56) the circuit court had subject matter jurisdiction to accept Petitioner's guilty plea and this allegation is dismissed. (R.pp. 115-122). As noted, the South Carolina Supreme Court denied Petitioner's appeal. See Court Docket No. 36-7.

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, with regard to the ineffective assistance



of counsel claims that were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

Here, after careful review of the record and the arguments presented, the undersigned

13



finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden

of showing that trial counsel was ineffective under the standard of <u>Strickland</u> and <u>Hill</u>, or that his

guilty plea was not voluntarily and knowingly entered.  <u>Smith v. North Carolina</u>, 528 F.2d 807, 809

(4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas

corpus].

       A review of the record confirms that at Petitioner's guilty plea, counsel (in Petitioner's

presence) represented to the plea court that he had reviewed the nature of the charges, the possible

punishments that Petitioner could receive, and Petitioner's constitutional rights with him, and that

he believed Petitioner understood all of those matters. (R.p. 4).  Counsel also informed the Court that

Petitioner wished to plead guilty, that he concurred with Petitioner's decision, and that based on his

knowledge of this case, counsel believed that the State had sufficient evidence to convince the jury

beyond a reasonable doubt of Petitioner's guilt.  (R.pp. 4-5).  After first listening to counsel's

representations, Petitioner then himself affirmed to the Court that he wanted to plead guilty, that he

had had enough time to discuss his plea with his counsel, that he was satisfied with his counsel's

representation and had no complaints, that his counsel had done everything that he thought that he

should do, and that there was nothing that counsel had done that Petitioner believed that he shouldn't

have done. (R.p. 5).  Petitioner also testified that  no one had promised him or threatened him in any

way to get him to plead guilty, and affirmed that he had no complaints against the Solicitor's office

or law enforcement or any person in the courtroom.  (R.p. 6).  Petitioner testified that he was pleading

guilty freely and voluntarily, and that he did not have any mental or physical infirmity that would

keep him from understanding what was happening at his guilty plea.  (R.pp. 6-7).  Petitioner then

testified that he understood that he was giving up certain constitutional rights including the right to



remain silent and not to incriminate himself, his right to a jury trial, and that at a jury trial that he would be presumed to be innocent and would have the right to cross-examine witnesses and present any witnesses of his own that he desired. (R.pp. 7-8). Petitioner testified that he wanted to plead guilty, and further affirmed that he understood that he was pleading guilty to murder which carried a possibility of life in prison without the possibility of parole, to two counts of armed robbery which carried a possibility of ten (10) to thirty (30) years in prison, and to two counts of possession of a weapon during a violent crime which carried five (5) years each. (R.pp. 8-9). Petitioner then affirmed that he understood that the judge could run all these sentences consecutive and that he could get life plus seventy (70) years and affirmed that, despite that possibility, he still wanted to plead guilty. (R.p. 9). Petitioner also affirmed that by pleading guilty he understood that he was giving up certain appellate rights that would have been related to trial issues. (R.p. 9).

       The plea court then told Petitioner to listen to the facts that the Solicitor was going to state in order to answer some more questions from the Court, following which the Solicitor presented the factual basis of the charges. (R.pp. 10-11). The Petitioner then affirmed that he heard the facts that the Solicitor presented, agreed with those facts, and admitted that he had committed these offenses. (R.p. 11). Petitioner then affirmed his prior criminal record and that he was currently incarcerated for threatening the life of a public official. (R.p. 12). Petitioner then told the Court that he understood everything that he had been told in Court, and that he did not have any questions for the Court or that he wanted the Court to ask his attorney. (R.pp. 12-13).

       At the sentencing hearing, Petitioner's counsel informed the sentencing court that Petitioner had had a psychological evaluation in 2000 and that counsel had petitioned again for Petitioner to have a psychological evaluation when he was appointed, which was done. Counsel



informed the sentencing court that both of those evaluations were pretty consistent and showed that Petitioner had a very low IQ of approximately 68, which falls in the range of being mentally retarded. Counsel then explained to the sentencing court that, due to some prior work experience as a brick mason, the psychological evaluation came to the conclusion that he was not mentally retarded, because he was educable mentally, but that he thought it was important that the Court have a "full understanding" of the Petitioner's history. (R.p. 29) The record reflects that Petitioner also asked the victim's family to forgive him at his sentencing. (R.p. 34).

While Petitioner testified at his PCR hearing that his counsel should have argued for mitigation based on his mental health; (R.p. 87); on cross examination Petitioner acknowledged that his counsel had made a motion to have him evaluated by the Department of Mental Health, that he was in fact evaluated by the Department of Mental Health[11], and that his counsel brought up the mental evaluation during his sentencing. (R.p. 91). For his part, counsel testified at the PCR hearing that he motioned to have Petitioner evaluated, that the evaluation was done, that he got Petitioner's school records, talked to the Department of Social Services worker who had been assigned to Petitioner, obtained those records, and reviewed them, and that during his representation of Petitioner he did not have any concern about Petitioner's mental state or competency to enter his guilty plea. (R.pp. 101-102). Counsel also testified that he reviewed the discovery material with Petitioner and Petitioner never indicated that he did not understand any of this material. (R.pp. 94-95).

With respect to the length of his sentence, Petitioner testified that his counsel had advised him that if he took the guilty plea that he would receive thirty (30) years, and that his counsel

---

[11]Although presenting no evidence to support his claim, Petitioner argued that this evaluation was only a brief examination, when it should have been a fifteen (15) day evaluation. (R.p. 91).



had also made this representation to Petitioner's grandparents. (R.pp. 85, 90). However, Petitioner's grandparents did not testify at his PCR hearing, and despite Petitioner contending that he had written documentation of this representation, he did not present any such documents to the PCR court. Conversely, counsel testified that he discussed the offenses, the elements of the offenses, and the potential penalties of each of the offenses with the Petitioner. (R.p. 96). Counsel also identified a document that he had prepared and Petitioner signed in February 2007, which Petitioner admitted he signed, which explained the charges, noted that the victim's family would still be asking the sentencing Court to impose a life sentence, and that a life sentence was still a possibility even if he entered a guilty plea. (R.pp. 89, 97-99). Counsel also testified that he explained to Petitioner that he was entering his guilty plea without negotiation or a sentencing recommendation from the State. (R.pp. 99-100). Counsel also testified that he explained the constitutional rights that Petitioner was giving up by entering his guilty plea and that it was ultimately Petitioner's decision as to whether to plead or not. (R.p. 100).

Petitioner has failed to establish that he was improperly advised of the sentence he was facing. The PCR court found Petitioner's counsel credible on this issue and that Petitioner was not credible, findings that are entitled to substantial deference on habeas corpus review. Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."]. While a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings (assuming that were to be the case). Further, given the deference due

17



the state court's findings on this credibility issue, Petitioner has not shown that the state court's findings were unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."].

In addition to being advised by counsel, it is clear in the record that the plea court also went over the facts of the case, Petitioner's rights prior to the acceptance of the plea, and potential sentences, following which Petitioner admitted he had committed the crime and entered his plea of guilty. Cf. Pittman v. South Carolina, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993)); see also State v. Lambert, 225 S.E.2d 340 (1976); Roddy v. South Carolina, 528 S.E.2d 418, 421 (S.C. 2000). See Sargent v. Waters, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting Marshall, 459 U.S. at 431-432). Petitioner has not provided the Court with any



evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. There is nothing reversible in the state court's findings based on the record of this case. Evans, 220 F.3d at 312.

          With respect to Petitioner's complaint that his counsel failed to protect his due process rights because counsel did not argue to the sentencing court about his mental status, the record contradicts Petitioner's assertions. The PCR court found that counsel's testimony was credible and persuasive on the issue of whether that he was able to communicate with Petitioner, that Petitioner understood the charges against him, was able to help with his defense, and had been gainfully employed before these charges. Counsel also investigated this issue, had Petitioner evaluated, and discussed this issue at Petitioner's sentencing. Petitioner did not present any evidence or witnesses supporting his assertions regarding his mental capacity in either his PCR proceedings or as part of this federal petition to support his arguments or that would have changed the outcome of his decision to plead guilty. Bassette, 915 F.2d at 941; cf. Bannister, 509 S.E.2d at 809 ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Lorenzen, 657 S.E.2d at 776-777 [Finding that Defendant's contention that expert testimony would have helped his case was merely speculative where he called no expert to testify]; Dempsey, 610 S.E.2d at 814 [concluding that a finding of prejudice is merely speculative where a PCR applicant fails to have an expert testify at the PCR hearing]; Kibler, 227 S.E.2d at 202 [the Court will not speculate concerning what might have occurred if counsel had conduct further investigation]; Clark, 434 S.E.2d at 267–268 [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the



result at trial would have been different].

Petitioner has also failed to show he suffered any prejudice due to counsel's failure to further argue about his mental condition at his sentencing, as he has failed to show that, even if his counsel had made additional arguments or requested a more comprehensive examination, he would been found incompetent or more mentally impaired to a point which would have affected his plea and/or sentencing. To the contrary, other than his own unsupported speculation, which is contradicted by the record, Petitioner has offered no evidence to show that he was incompetent or had mental issues which would have affected his sentencing, or to show that his guilty plea was involuntary. Cf. Jeter v. State, 417 S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea]. Accordingly, Petitioner has failed to show deficient performance or prejudice on trial counsel's part for failing to pursue or obtain any such evidence or make any further arguments to the court. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Criminal defendants often make the decision to plead guilty based on a likelihood of conviction at trial, and although Petitioner now claims that his plea was involuntary based on his alleged mental incompetence or on his anticipating receiving a lesser sentence, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such



20

as ineffective assistance of counsel. <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d. 167, 171 (4th Cir. 1981). Here, Petitioner readily admitted his guilt, and he has failed to show his counsel was ineffective under the standards discussed hereinabove.

Petitioner has therefore failed to meet his burden of proving trial counsel failed to render reasonably effective assistance. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; <u>see also</u> <u>Wade v. State</u>, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; <u>Hill</u>, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial]. Grounds One and Two of the Petition are without merit and should be dismissed.

## II.

Petitioner contends in Ground Three that his sentence is unconstitutional because he is mentally retarded and had just recently turned eighteen, while in Ground Four Petitioner contends that his sentence for possession of a weapon during the commission of a violent crime was illegal.

Petitioner failed to raise either of these issues in his direct appeal or his APCR proceedings. Therefore, these issues were not properly preserved at the state court level, and as a result are procedurally barred from consideration by this Court on federal habeas review. <u>State v. Powers</u>, 501 S.E.2d 116, 118 (S.C. 1998); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>see also</u> <u>White v. Burtt</u>, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing <u>Pruitt v. State</u>, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); <u>cf.</u> <u>Cudd v. Ozmint</u>, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C.



Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Because Petitioner did not properly raise and preserve any of the issues he now asserts in Grounds Three and Four in either his APCR proceedings or by way of a direct appeal, they are barred from further state collateral review; Whiteley, 401 U.S. at 562 n. 3; Wicker v. State, supra; Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted. Coleman v. Thompson, 501 U.S. at 735; Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews



v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas

Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement

for claims not fairly presented to the state's highest court is technically met when exhaustion is

unconditionally waived by the state...or when a state procedural rule would bar consideration if the

claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998

WL 726757 at **1.

        However, even though otherwise exhausted, because these issues were not properly

pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is

now precluded absent a showing of cause and prejudice, or actual innocence.  Martinez,132 S.Ct.

1309, 1316; Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir.

1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims
> in State court pursuant to an independent and adequate State
> procedural rule, Federal Habeas review of the claim is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of Federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage
> of justice.

Coleman, 501 U.S. at 750.

In his response, Petitioner argues as "cause" for failing to raise these claims, that his PCR counsel

and/or his appellate counsel were ineffective for failing to raise them.  The United States Supreme

Court has held that "if the procedural default is the result of ineffective assistance of counsel, the

Sixth Amendment itself requires that responsibility for the default be imputed to the State . . .

Ineffective assistance of counsel, then, is cause for procedural default."  Murray, 477 U.S.  at 488;

see also  Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v.



23

<u>Barnett</u>, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause <u>per se</u> in the procedural default context"]; <u>Smith v. Dixon</u>, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).

### PCR Counsel

While ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; <u>Ortiz v. Stewart</u>, 149 F.3d 923, 932 (9th Cir. 1998); <u>Bonin v. Calderon</u>, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute "cause" for a procedural default.  <u>Murray v. Giarratano</u>, 492 U.S. 1-7, 13 (1989) [O'Connor, J., <u>concurring</u>] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings.  A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment.  Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; <u>Mackall v. Angelone</u>, 131 F.3d 442, 447-449 (4th Cir. 1997); <u>Ortiz</u>, 149 F.3d at 932; <u>Pollard v. Delo</u>, 28 F.3d 887, 888 (8th Cir. 1994); <u>Lamp v. State of Iowa</u>, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); <u>Parkhurst v. Shillinger</u>, 128 F.3d 1366, 1371 (10th Cir. 1997); <u>Williams v. Chrans</u>, 945 F.2d 926, 932 (7th Cir. 1992); <u>Gilliam v. Simms</u>, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).  However, in <u>Martinez</u> the Supreme Court carved out a "narrow exception" that modified

> "the unqualified statement in <u>Coleman</u> that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." <u>Martinez</u>, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice



24

system . . . . Indeed, the right to counsel is the foundation for our adversary system." Id. at ___, 132 S.Ct. at 1317.

Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were Coleman read broadly) deprive a defendant of any review of that claim at all. Martinez, supr a at ___, 132 S.Ct. at 1316.

We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); see also Gray v. Pearson, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default. Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."]

Therefore, because, under South Carolina law, a claim of ineffective assistance of trial or appellate counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v.



Reynolds, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 2013 WL 2451083, at * 4, fn *; a petitioner's claim of ineffective assistance of PCR counsel as "cause"for his default may be considered under the revised standard of Martinez and Trevino. However, under the first requirement of the Martinez exception, the Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." Gray, 2013 WL 2451083 at * 2. Here, however, in Grounds Three and Four, Petitioner does not raise any ineffective assistance of counsel claims. Rather, he raises the claims on the underlying merits. Therefore, the Martinez exception does not apply to these claims, and any alleged ineffectiveness of PCR counsel cannot be "cause" for a procedural default of these claims.

**Direct Appeal Counsel**

With regard to Petitioner's claim that ineffective assistance of appellate counsel was the "cause" for his failing to raise these issues in his direct appeal, "ineffective assistance of counsel on direct appellate review [can] amount to 'cause', excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim." Trevino, 133 S.E. at 1917. This claim is analyzed under the traditional Coleman v. Thompson analysis.

These issues were procedurally defaulted at the trial/plea court level because South Carolina is an issue preservation state; I'On, LLC v. Town of Mt. Pleasant, 526 S.E.2d 716, 724-725 (S.C. 2000); and since these issues were not raised to the plea judge, they could not have been raised on direct appeal. State v. Powers, 501 S.E.2d at 118; State v. Varvil, 526 S.E.2d 248, 250 (S.C.Ct.App. 2000). Accordingly, Petitioner cannot show any ineffective assistance of appellate counsel for failure to raise these issues on appeal, because they were not preserved for appellate

26

review.  Therefore, Petitioner has failed to show cause for his procedural default of these issues.

Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991)

["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal

Court."].

        Furthermore, even if these were claims that appellate counsel could have raised,

Petitioner has also failed to show the necessary prejudice.  With regard to Ground Three, the Court

has already addressed and found that Petitioner has presented no evidence to show that his alleged

mental problems affected his decision to plead guilty or that his mental capacity was not properly

considered by the plea and/or sentencing court.  With regard to Petitioner's argument that he had just

turned 18, Petitioner does not argue that he was a minor at the time of the murder.  Rather, that he

only argues that he had only recently became an adult.  Petitioner has presented no evidence to show

that the necessary prejudice on this claim.

        As for Ground Four, Petitioner contends that his five (5) year sentence for possession

of a weapon during the commission of a violent crime was illegal, noting that S.C. Code § 16-23-490

provides that  "[t] his five-year sentence does not apply in cases where the death penalty or a life

sentence without parole is imposed for the violent crime."  However, in Petitioner's case there were

two separate violent crimes and two separate indictments.  In Indictment 06-GS–45-339, Petitioner

pled to armed robbery and possession of a weapon during the commission of a violent crime.  With

regard to those charges, his sentence included a five (5) year sentence on the possession charge.

(R.pp. 36-38).   However, with regard to Indictment No. 06-GS-45-340, Petitioner pled guilty to

murder, armed robbery, and possession of a weapon during commission of a violent crime, and since

Petitioner was sentenced to life for murder in that indictment, the sentencing judge specifically stated



that he could not sentence Petitioner to five (5) years for possession of a weapon during commission of a violent crime in Indictment No. 06-GS-45-339. (R.pp. 36-38). Petitioner has presented no evidence that his sentence on this charge was unconstitutional or to show the necessary prejudice to overcome his procedural default on this claim.

Finally, to the extent Petitioner is arguing that he is actually innocent, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges to which he admitted his guilt in Court and plead guilty to the charges. See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an actual innocence claim). Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if these claims are not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Grounds Three and Four for relief asserted by Petitioner in this habeas



petition are procedurally barred from consideration by this Court.

### III.

In Petitioner's response he raises a subject matter issue which was not presented as a ground in his federal habeas petition.  Even if this issue had been properly raised, however, Petitioner's argument that the trial court lacked subject matter jurisdiction due to an allegedly defective indictment is a state law issue, and it is not for this Court to determine such issues of state law.  <u>Thompson v. Perry</u>, No 06-3429, 2007 WL 2579570 at *4 (D.S.C. Sept. 4, 2007)["[I]t is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists."]; <u>Dew v. Pancake</u>, No. 07-37, 2007 WL 4302429 at *4  (W.D.Ky.  Dec. 7, 2007)["This court does not review determinations of state law [regarding a subject matter jurisdiction challenge] made by South Carolina courts"].  In any event, the South Carolina Supreme Court noted in <u>Winns v. State</u>,

> that our decision in this case is consistent with the recently published opinion of <u>State v. Gentry</u>, Op. No. 25949 (S.C. Sup.Ct. filed March 7, 2005), which explains that indictments are notice documents, not documents required to confer subject matter jurisdiction.  <u>See</u> S.C. Const. art. V, Section 11 (providing that circuit courts are 'general trial court[s] with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law').

611 S.E.2d 901, 904 n. 2 (S.C. 2005).

In <u>Gentry</u>, the South Carolina Supreme Court overruled prior cases "to the extent that they combine the concept of the sufficiency of an indictment and the concept of subject matter jurisdiction." <u>Gentry</u>, 610 S.E.2d 494, 500-501 (S.C. 2005).  Therefore, under current South Carolina law, Petitioner's allegation with respect to a purported defect in his indictment is not even a subject matter jurisdiction claim. <u>See</u> <u>Madden v. Warden</u>, No. 07-1109, 2008 WL 351010, *5 (D.S.C. Feb.



29

7, 2008) [Discussing retroactivity of <u>Gentry</u>]; <u>State v. Means</u>, 626 S.E.2d 348, 352 (S.C. 2006)[same];

<u>see also Mazyck v. Knowlin</u>, No. 09-1222, 2009 WL 2447981 at * 1 (D.S.C. Aug. 7, 2009)["South

Carolina Supreme Court has ruled that alleged deficiencies and irregularities in an indictment are not

matters of subject matter jurisdiction."]; <u>Evans v. State</u>, 611 S.E.2d 510, 516-520 (S.C. 2005)[subject

matter jurisdiction is the power of a court to hear and determine cases whereas the indictment is a

notice document and issues relating to the indictment generally are not issues of subject matter

jurisdiction].

   Even with respect to Petitioner's claim that the indictment was "defective", the

"sufficiency of an indictment or information is [also] primarily a question of state law". <u>Tapia v.</u>

<u>Tansy</u>, 926 F.2d 1554, 1560 (10th Cir. 1991)](quoting <u>Franklin v. White</u>, 803 F.3d 416, 418 (8th Cir.

1986))(quoting <u>Goodloe v. Parratt</u>, 605 F.2d 1041, 1045 n. 12 (8th Cir. 1979), <u>cert. denied</u>, 481 U.S.

1020 (1987)), <u>cert. denied</u>, 502 U.S. 835 (1991).  Deficiencies in state court indictments "are not

ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously

unfair as to amount to a deprivation of the defendant's right to due process." <u>Ashford v. Edwards</u>,

780 F.2d 405, 407 (4th Cir. 1985). <u>See also Johnson v. Puckett</u>, 930 F.2d 445, 447 (5th Cir. 1991),

<u>cert. denied</u>, 502 U.S. 890 (1991) ["In a federal court, habeas corpus can be invoked with respect to

indictments only where they are 'so fatally defective' that under no circumstances could a valid

conviction result from facts provable under the indictment."]; <u>Morlett v. Lynaugh</u>, 851 F.2d 1521,

1523 (5th Cir. 1988)["[T]he sufficiency of a state indictment is not a matter for federal habeas corpus

relief unless it can be shown that the indictment is so defective that the convicting court had no

jurisdiction."](quoting <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985)(other citation

omitted)), <u>cert. denied</u>, 489 U.S. 1086 (1989).  There is no evidence of any such deficiency in this



case. The PCR court addressed Petitioner's subject matter jurisdiction challenge to his indictments and found them to be without merit; (R.p. 121); and there is nothing in the indictments provided to this Court to challenge this finding, or to show that Petitioner's federal due process rights were violated. Ashford, 780 F.3d at 407. Therefore, even assuming arguendo that Petitioner had properly raised this claim in his petition, there is no basis in the record before this Court on which to find a federal due process violation. State v. Owens, 359 S.E.2d 275, 277 (S.C. 1987) [Indictment is sufficient "if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and if an acquittal or conviction thereon may be pleaded as a bar to any subsequent prosecution"]; Johnson, 930 F.2d at 447, cert. denied, 502 U.S. at 890 ["In a federal court, habeas corpus can be invoked with respect to indictments only where they are 'so fatally defective' that under no circumstances could a valid conviction result from facts provable under the indictment."].

Petitioner is not entitled to federal habeas relief on this ground. Estelle v. McGuire, 502 U.S. 62, 67 (1991)[It is not the province of a federal habeas court to re-examine state court determinations of state law questions.]; Thompson, 2007 WL 2579570 at *4 ["[I]t is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists."]; Dew, 2007 WL 4302429 at *4 ["This court does not review determinations of state law [regarding a subject matter jurisdiction challenge] made by South Carolina courts"]; Shepler v. Evans, No. 99-7021, 1999 WL 542885 at **2 (10th Cir. 1999), cert. denied, 528 U.S. 1077 (2000).

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 3, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk

United States District Court

Post Office Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

